# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 27, 2009

Charles R. Fulbruge III
Clerk

No. 08-30857

DAVON GROUP LTD

Plaintiff - Appellant-Cross-Appellee

v.

SYD DYER, JR, Medical Doctor; NATIONAL COMMUNICATIONS INC;
NATIONAL COMMUNICATIONS LLC

Defendants - Appellees-Cross-Appellants

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 2:07-CV-1976

Before BARKSDALE, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

In this diversity action, Davon Group, Ltd. ("Davon Group") seeks to hold Syd Dyer, Jr. ("Dyer") personally liable for repayment of $879,785 based on a loan agreement whereby Davon Group loaned this amount to Dyer. The district court held that Dyer was not personally liable, the due-on-sale clause was unenforceable to impose personal liability on Dyer, and Davon Group must accept the collateral and cancel the note. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.    Background

National Communications, Inc. ("NCI") was formed in 1996 as a Louisiana corporation. Davon Group and other shareholders owned stock in NCI. Effective December 1998,[1] Davon Group, Dyer, and NCI entered into a loan agreement whereby Davon Group loaned $879,785 to Dyer. Dyer executed a promissory note in favor of Davon Group for the sum of the loan, which identified shares of common stock of NCI as collateral. The loan agreement provides that upon a NCI merger, Dyer "shall be obligated to pay in full any unpaid balance of accrued interest and principal of the Note" to Davon Group, and if payment is not made, the NCI merger "shall be null and void *ab initio*."

Regarding personal liability, the loan agreement states that

> [t]he Purchaser will repay the Indebtedness to each Seller according to the reading, tenor and effect of the Note to such Seller and this Agreement, and will do and perform every act required of Purchaser by this Agreement, the Note and the Stock Pledge Agreement to which such Seller is a party, at the time or times and in the manner specified; *provided, however, that anything in this Agreement, or in the Stock Pledge Agreement or any other agreement to which any Seller is a party to the contrary notwithstanding, Purchaser shall have no personal liability to Seller for any Indebtedness. No Seller shall have recourse to Purchaser, or to any of Purchaser's assets other than the Collateral, for the payment of the Indebtedness to Seller*. (Emphasis added.)

In April 2005, NCI merged into National Communications, L.L.C. ("NCL"), a Louisiana limited liability company. Davon Group sought to enforce the promissory note personally against Dyer. Dyer contends that the parties agreed that there would never be personal liability against him. The parties filed cross motions for summary judgment.

---

[1] The loan agreement is dated March 11-12, 1999, but it was made effective December 31, 1998. The promissory note is dated March 12, 1999.

The district court held that the contracts made clear that Davon Group has no recourse to Dyer or his assets other than the collateral, and Dyer has no personal liability. The district court therefore held that the Davon Group could not enforce the promissory note personally against Dyer; Dyer was entitled to specific performance, requiring Davon Group to accept return of the stock and cancel the note; and the merger between NCI and NCL triggered the due-on-sale clause, but the clause was unenforceable pursuant to the provision of the agreement providing that Dyer shall have no personal liability. Both parties appeal.

## II.    Discussion

We review a district court's grant of summary judgment *de novo*. *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We also review the interpretation of contracts *de novo*. *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods., Inc.*, 448 F.3d 760, 777 (5th Cir. 2006). Under Louisiana law, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE ANN. art. 2050. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046.

The parties clearly set forth their intent that Dyer shall have no personal liability with the following language in the contract: "provided, however, that anything in this Agreement, or in the Stock Pledge Agreement or any other agreement to which any Seller is a party to the contrary notwithstanding, Purchaser shall have no personal liability to Seller for any Indebtedness." *See*

*Gilbert v. Evan*, 822 So. 2d 42, 46 (La. Ct. App. 2002) ("This agreement exists 'Notwithstanding the above' which means, if the conditions are met, that this provision supercedes all of the earlier above provisions . . . ."); *see generally Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."). "[A] clearer statement is difficult to imagine." *Cisneros*, 508 U.S. at 18 (internal quotation and citations omitted). We therefore affirm the district court's judgment as it relates to Dyer having no personal liability for the debt.

Dyer argues that the district court erred in finding that the merger triggered the due-on-sale clause because the parties agreed that the merger was a nullity. Dyer nonetheless agrees that the district court correctly held that the due-on-sale clause was unenforceable because of the provision providing that Dyer shall have no personal liability. We need not reach the question whether the due-on-sale clause was triggered, as the only result would be to impose personal liability on Dyer. Because we hold that Dyer has no personal liability under the parties' agreements, we affirm the district court's judgment on this issue.

The district court also held that Dyer was entitled to specific performance, requiring Davon Group to accept return of the stock and cancel the note. Davon Group argues that the subject stock no longer exists because of the merger. The parties, however, agreed that any NCI merger "shall be null and void *ab initio*," and in the event of a purported merger, Davon Group had "the right to seek and obtain rescission of the transaction in any court of competent jurisdiction." Despite language potentially rendering the merger a nullity, it does not appear that Davon Group ever sought the remedies available under the agreement. Davon Group construes the merger as valid, and it seeks to rely on such merger

to argue that the NCI stock is destroyed. *See CDI Corp. v. Hough*, 9 So. 3d 282, 287 (La. Ct. App. 2009) ("Contracts have the effect of law for the parties." (citing LA. CIV. CODE ANN. art. 1983)). Even if we were to accept Davon Group's argument that the stock was destroyed, Dyer still would not be personally liable for the debt, as discussed *supra*. Davon Group's sole remedy on appeal, therefore, is to accept the return of the stock. We affirm the district court's judgment on this issue.

### III.   Conclusion

For the foregoing reasons, we affirm the district court's judgment.